IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 09-00105-01-CR-W-DGK |
| ) | |
| SHAWN J. BRISBIN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Before the court is Defendant's Motion to Suppress on grounds that Defendant was not advised of his Miranda rights before making statements to Task Force Officers Greg Harner and Greg Coon on November 19, 2008. Defendant moves the court to suppress these statements, arguing that he was subjected to a custodial interrogation. Defendant does not maintain that his statements were involuntary.

### *I. BACKGROUND*

On November 19, 2008, Task Force Officer Harner contacted Defendant by telephone and informed Defendant he would like to question him about an ongoing investigation. Defendant agreed to meet Officers Harner and Coon in Shenandoah, Iowa, later that day. Defendant met the officers as planned. He then spoke to Officers Harner and Coon in Officer Coon's vehicle for approximately forty-five minutes, during which time he made incriminating statements.

Defense counsel filed the instant motion to suppress on May 14, 2009 (Doc. No. 18). The government responded to Defendant's motion on May 29, 2009 (Doc. No. 27). On July 15, 2009,

1

I conducted an evidentiary hearing. The government appeared by Assistant United States Attorney Patrick Daly. Defendant was present, represented by appointed counsel Matthew Dameron. The government called Task Force Officer Gregory S. Harner, ATF, to testify. In addition, the following exhibit was marked and admitted into evidence:

Government's Exhibit 1:   Report of Investigation

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. Through investigation, Task Force Officer Greg Harner became aware of Defendant's suspected involvement with methamphetamine distribution (Tr. at 3, 11-12; Gvt. Exh. 1).

2. On November 19, 2008, Task Force Officers Greg Harner and Greg Coon traveled to Shenandoah, Iowa, to a residence where they believed Defendant lived (Tr. at 4; Gvt. Exh. 1). Upon arrival, the officers made contact with Defendant's father (Tr. at 4; Gvt. Exh. 1). They advised him they wanted to speak to Defendant about an ongoing investigation (Tr. at 18). Defendant's father provided Officers Harner and Coon with Defendant's telephone number (Tr. at 4, 18; Gvt. Exh. 1).

3. Officer Harner called Defendant on the telephone (Tr. at 4; Gvt. Exh. 1). He identified himself to Defendant and told Defendant he would like to ask him some questions about an ongoing investigation (Tr. at 4; Gvt. Exh. 1). Officer Harner advised Defendant he did not have to meet with them (Tr. at 19). Officer Harner also advised Defendant that he would not be placed under arrest (Tr. at 4, 19; Gvt. Exh. 1).

4. Defendant told Officer Harner that he currently lived in Council Bluff, Iowa, but agreed to meet him at the Wal-Mart parking lot in Shenandoah, Iowa (Tr. at 4-5; Gvt. Exh. 1). Council Bluff, Iowa, is approximately one hour away from Shenandoah, Iowa (Tr. at 5).

5. Officers Harner and Coon traveled to the Wal-Mart parking lot (Tr. at 5). Officer Harner was operating a government car and Officer Coon was operating a Ford Explorer (Tr. at 5). The Ford Explorer was not marked and did not have government plates (Tr. at 5, 13).

6. Defendant met Officers Harner and Coon in the Wal-Mart parking lot at approximately 2:00 p.m.; Defendant's father also came to the parking lot (Tr. at 4, 6, 20-21). When Defendant arrived, he alerted Officer Harner by telephone (Tr. at 5). They made contact outside of their respective cars (Tr. at 19). Officer Harner identified himself again to Defendant and showed him his identification (Tr. at 5, 15).

7. Officer Harner was dressed in plain clothes (Tr. at 13-14). His clothing did not bear any law enforcement insignia (Tr. at 14).

8. Officer Harner asked Defendant to enter the Ford Explorer so that they could talk (Tr. at 5, 15). Defendant agreed, and sat in the front passenger's seat; Officer Harner sat in the driver's seat and Officer Coon sat in the back (Tr. at 5-6, 15, 21). Defendant's father remained in his vehicle (Tr. at 6, 21).

9. Defendant was advised that he was not under arrest and that he was free to leave at any time (Tr. at 6, 19; Gvt. Exh. 1). The doors of the Ford Explorer were not locked (Tr. at 6, 17). There were concealed firearms in the vehicle, but the firearms were never displayed to Defendant (Tr. at 14, 20).

10. At no point was Defendant placed in handcuffs (Tr. at 20).

11. During their conversation, Officer Harner advised Defendant that Defendant's name had come up as part of their investigation (Tr. at 16). Defendant told the officers that he had not dealt methamphetamine for approximately two years (Gvt. Exh. 1).

12. Officer Harner asked Defendant if he was familiar with an individual named "Chris Walker" (Tr. at 7). Defendant responded that knew both Chris Walker and Jeremy Ebrecht (Tr. at 7; Gvt. Exh. 1). Defendant stated he had known Jeremy Ebrecht for four to five years and had provided Mr. Ebrecht with methamphetamine five or six times (Tr. at 7; Gvt. Exh. 1). Each occasion involved approximately one-quarter ounce of methamphetamine (Tr. at 7). Defendant stated he sold an eight-ball (3.5 grams) of methamphetamine to Mr. Walker approximately six times (Gvt. Exh. 1). Defendant also provided details about the location where he sold methamphetamine and about his suppliers (Gvt. Exh. 1).

13. Defendant was not <u>Mirandized</u> (Tr. at 19, 23). Officer Harner testified he and Officer Coon did not to <u>Mirandize</u> Defendant because it was a voluntary, non-custodial statement (Tr. at 23).

14. The conversation lasted approximately forty-five minutes (Tr. at 17, 21). Officer Harner concluded by providing Defendant his telephone number and telling Defendant to call him with any additional information (Tr. at 16).

15. Defendant was not placed under arrest at the conclusion of the conversation (Tr. at 8).

### III. LEGAL ANALYSIS

In Miranda v. Arizona, the United States Supreme Court held that in order for statements obtained during a custodial interrogation to be used at trial, law enforcement officers must have first

4

advised the defendant of his or her Constitutional rights. 384 U.S. 436, 444 (1966). Miranda warnings are thus only required when a suspect is (1) interrogated (2) while in custody. United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir. 1992); United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990); Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1989)(citing Rhone Island v. Innis, 446 U.S. 291, 300 (1980)).

**Interrogation**

For purposes of Miranda, an "interrogation" refers to "any questioning or conduct that the government officer should know is reasonably likely to elicit an incriminating response from the suspect." United States v. McLaughlin, 777 F.2d 388, 391 (8th Cir. 1985)(citing Innis, 446 U.S. at 301). The parties in this case do not seem to dispute that an interrogation occurred. Likewise, the record reveals that Officers Harner and Coon questioned Defendant about his suspected involvement with methamphetamine distribution. Officer Harner specifically asked Defendant about Chris Walker, another individual also suspected to be involved with methamphetamine distribution. Given the ongoing investigation, these questions were specifically designed to elicit an incriminating response. Because I find that Defendant was subjected to interrogation, I will next consider whether he was in custody at the time.

**<u>Custody</u>**

"Custody occurs either upon formal arrest or any other circumstances where the suspect is deprived of his freedom of action in any significant way." Griffin, 922 F.2d at 1347 (emphasis omitted). Determination of whether an individual is in custody involves examination of whether "a 'reasonable person in the suspect's position would have understood his situation' to be one of

5

custody." Id. Indicia of custody include whether: (1) "the suspect was informed at the time of questioning that the questioning was voluntary"; (2) "the suspect possessed unrestrained freedom of movement during questioning"; (3) "the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions"; (4) "strong arm tactics or deceptive stratagems were employed during questioning"; (5) "the atmosphere of the questioning was police dominated"; or (6) "the suspect was placed under arrest at the termination of the questioning." Id. at 1349. This determination is based on the totality of the circumstances. Id.

Application of these indicia to the facts of this case reveal that Defendant was not in custody when interrogated by Officers Harner and Coon. The first factor, advice given by officers, weighs against a finding of custody. "The most obvious and effective means of demonstrating that a suspect has not been 'taken into custody' . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." Id. When Officer Harner initially contacted Defendant by phone, Officer Harner informed Defendant he wanted to question Defendant about an ongoing investigation. Officer Harner specifically advised Defendant that Defendant did not have to meet with him; he also specifically advised Defendant he would not be placed under arrest. Before questioning Defendant in the Wal-Mart parking lot, Officer Harner again advised Defendant that he was not under arrest and that he could leave at any time.

The second factor also weighs in favor of a finding that Defendant was not in custody. Defendant's freedom of movement was not restrained during questioning. Defendant sat in the front passenger seat of the Ford Explorer next to the door; the doors to the vehicle were not locked. Defendant was not handcuffed at any point. A reasonable person would not feel that he was in custody under these circumstances.

6

The third indicum of custody concerns who initiated the contact. Here, Officer Harner initiated contact by informing Defendant by telephone that he and Officer Coon wanted to talk to Defendant about an ongoing investigation. Defendant acquiesced to this request, however, and voluntarily traveled one hour to meet with Officers Harner and Coon in Shenandoah, Iowa. Once questioning began, Defendant permitted questioning to continue and never sought to terminate the interrogation. See United States v. Czichray, 378 F.3d 822, 828-29 (8th Cir. 2004). This factor supports a finding that Defendant was not in custody.

Fourth, there is no evidence that Officer Harner or Officer Coon used strong arm tactics. At no time did either officer display their firearms to Defendant. Similarly, the atmosphere of the questioning was not police dominated. Defendant met the officers in a Wal-Mart parking lot at 2:00 in the afternoon. He agreed to get into the Ford Explorer to facilitate their conversation. The questioning lasted approximately forty-five minutes. Defendant was not arrested when the interrogation concluded. These factors all indicate Defendant was not in custody.

For the above-stated reasons, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying Defendant's Motion to Suppress.

Government counsel and Defendant are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
July 28, 2009

8